**RICHARD D. WILLIAMS (SBN 58640)**
rwilliams@williamslawfirmpc.com
**MINA HAKAKIAN (SBN 237666)**
mhakakian@williamslawfirmpc.com
**WILLIAMS LAW FIRM PC**
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**NOVEON SURGERY CENTER, INC.**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **NOVEON SURGERY CENTER, INC.,** a California Corporation,<br><br><br><br>Plaintiff,<br><br>vs.<br><br><br>**TEAMSTERS WESTERN REGION & LOCAL 177 HEALHCARE PLAN; AND DOES 1 to 100,**<br><br><br>Defendants. | Case No.: 2:22-cv-01266<br><br><br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |

– 1 –

Plaintiff, Noveon Surgery Center, Inc. ("Noveon" or "Plaintiff"") alleges as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act ("ERISA").

2.     This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and pursuant to 29 U.S.C. § 1132 (e)(2) because this is the Judicial District where the breaches took place, and because Defendant Teamsters Western Region & Local 177 Healthcare Plan conducts a substantial amount of business in this Judicial District.

## II.   THE PARTIES

### A. Plaintiff

3.     Noveon is a California corporation doing business in the County of Los Angeles, State of California.  Noveon was incorporated in the State of California in April 2015.

4.  Noveon operated as a physician-owned Outpatient Ambulatory Surgery center (the "Facility").  Physician owned Ambulatory Surgery centers are regulated by the Medical Board of California as an "Outpatient Setting".  Noveon was accredited and certified by the Joint Commission as of November 21, 2015.

5.     The surgery center facility operated by Noveon at 5620 Wilbur Ave, Tarzana, CA 91356 maintained state of the art medical technology devises and other high quality equipment necessary to carry out specialized surgical procedures for medical patients.  The types of procedures performed at Noveon's Facility included

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

foot and ankle surgery, back surgery, epidural injections, ear, nose and throat surgery, septoplasty and related nasal surgeries, colonoscopies, gasterointestinal surgery, and general surgery. Prior to closing its active operations in 2021, Noveon provided facility usage and related surgical services on behalf of a wide variety of individual patients, many of whom were insured under the terms of group health insurance plans that are governed by ERISA.

**B. Defendant**

6.    Plaintiff is informed and believes that the Teamster Western Region and New Jersey Health Care Fund was formed as the Southwestern Teamsters Security Fund in the collective bargaining process in the early 1950's by and between various Teamster local unions in the southwestern United States and various employers in the grocery, delivery and warehouse industries. In mid-2014, UPS employees in New Jersey, parts of New York and in the Western United States were collectively bargained into participation in the Fund ("Teamster Plan"). The Plan served about 40,000 UPS Teamsters (plus family members) in 11 western states.

7.    The Teamster Plan was established under and subject to the federal law, Employee Retirement Income Security Act of 1974, as amended, commonly known as ERISA. The Medical PPO Plan, Dental PPO Plan, Vision PPO Plan, Short Term Disability benefits and the Death and Accidental Death and Dismemberment benefits are self-funded with contributions from participating employers held in a Trust which are used to pay Plan Benefits.

8.    Plaintiff is informed and believes that a Multi-Employer Fund (the "Fund") was designed by the bargaining parties so that workers can be covered by one health benefits program. Plaintiff is informed and believes that under the Multi-Employer Fund, industry employers make contributions to the Fund on behalf of the working employees. These contributions are a part of the overall wage/benefit

– 3 –

package negotiated by the Teamster Union and the employer.  The Board of Trustees, which consists of industry labor and management leaders, receives the contributions, hold them in trust to pay benefits and administrative expenses, and invests the reserves for the future.  The Fund is not an insurance company that returns profits to its investors; the Fund utilizes its contributions and earnings either to provide benefits to employees and their dependents or to pay expenses.

9.      Plaintiff is informed and believes that a board comprised equally of Teamsters and company trustees exists in order to direct the Plan.  The Board of Trustees has full and exclusive authority to determine all questions of coverage and eligibility, the method of providing or arranging for benefits and any other related matters.  The Trustee have full power to construe the provision of the Trust Agreement (the Agreement and Declaration of Trust for the Teamsters Western Region and New Jersey Healthcare Fund) and the Rules and Regulations of the Plan.

10.     Plaintiff is informed and believes that the Teamster Plan offers medical coverage for doctor visit, hospitalization, Outpatient (Ambulatory) Surgery Facility Fees and the like for both in-network and out-of-network providers.  Under the Teamster Plan members are free to choose to visit a provider who does not participate in the network and they will still receive coverage. Outpatient Surgery Center Facility fees are covered at 90% with a deductible of $100 per individual and $200 for family coverage, as identified on the Teamsters Plan general website under the description of Medical and Hospitalization Benefits.

11.     Plaintiff is informed and believes that the Teamster Plan provides coverage for Plan members-insureds and dependents who receive medical services anywhere in California, in other states, and in other countries. Plaintiff is informed and believes that the Plan is structured in such a manner that health insurance is provided for employees wherever they might live, work or travel throughout the

– 4 –

United States and worldwide. Plaintiff is informed and believes that it is the intent and function of the Teamster Plan that its members and dependents will have full Plan benefits available to them irrespective of where covered healthcare services are provided.

**C. Doe Defendants**

12.     The true names and capacities of the Defendants sued herein as DOES are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names.  Plaintiff is informed and believes that the DOES are those individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for the healthcare services, rendered by Plaintiff as alleged herein.  The Complaint will be amended to allege the DOES' true names and capacities when they have been ascertained.

III.   <u>SIGNIFICANT NON PARTY ADMINSTRATORS OF THE TEAMSTER PLAN</u>

**A. Southwest Service Administrators**

13.     Plaintiff is informed and believes that the Teamster Plan is administered by Southwest Service Administrators Inc. ("Southwest Administrators").  Southwest Administrators is an independent third-party health benefit administrator selected by the Teamster Western Region and Local 177 Health Care Plan trustees to manage the health care benefits and to provide day-to-day Plan operations.  Southwest Administrators specializes in labor-management fund administration and has worked with Teamster funds and other union funds since 1995.

14.     Plaintiff is informed and believes that medical coverage is provided by the Teamster Western Region & Local 177 Healthcare Plan to members, spouses and their dependents through Aetna PPO, Blue Cross Blue Shield PPO and/or Kaiser

Permanente HMO depending on where the member resides. Plaintiff is informed and believes that Blue Cross Blue Shield PPO is the network Plan for residents of Alaska, California, Idaho, Montana, New Mexico, Oregon, Pennsylvania and Washington.

**B. The Anthem, Inc. and Anthem Blue Cross Entities**

15.    Plaintiff is informed and believes that the Anthem, Inc. is a corporate holding company organized and existing in the state of Indiana.  Anthem, Inc. operates its various business activities in California by way of its corporate subsidiary known as Anthem Blue Cross.  This California entity is one of a handful of large healthcare insurers that carry out substantial business of health insurance in this state.

16.    Plaintiff is informed and believes that Anthem Blue Cross operates in its own name and on its own behalf as a California healthcare claims administrator and insurer.  In addition, Anthem Blue Cross performs services on behalf of numerous entities bearing some form of derivative of the "Blue Cross" or "Blue Shield" names that carry out health insurer activities primarily outside of the state of California.

**C. Blue Cross Blue Shield of Arizona**

17.    Plaintiff is informed and believes that the Teamsters Plan has retained third party vendors to handle claims and customer services.  Plaintiff is informed and believes that Blue Cross Blue Shield of Arizona ("BCBS-AZ") was hired by the Teamsters to provide administrative claims payment services and BCBS-AZ does not assume any financial risk or obligation with respect to claims.

18.    Plaintiff is informed and believes that BCBS-AZ is an independent licensee of the Blue Cross Blue Shield Association (the "BCBS Association").  Each BCBS Association member-insured is able to utilize other BCBS Association licensees' provider networks and provider discount contracts when a member-insured works or travels outside of the state in which his/her health insurance policy is written. This nationwide program of cooperation among BCBS Association members is

1  referred to as the "Blue Card Program".

2      19.    Plaintiff is informed and believes that as a BCBS Association licensee,

3  BCBS-AZ is authorized to provide member-insured services in California in

4  conjunction with out-of-state insurer entities.

5  **IV.    THE BLUE CARD PROGRAM AND HANDLING OF PLAINTIFF'S**

6  **CLAIMS THROUGH THE BLUE CARD PROGRAM**

7      20.    The Blue Card Program links physicians, facilities and other healthcare

8  professionals and independent Blue Cross and/or Blue Shield Plans, across the

9  country and abroad with a single electronic network for claims processing and

10  reimbursement.  The Blue Card program eliminates the need for the patients and

11  physicians to deal with multiple Blue Plans.  The program allows physician/patients to

12  submit all types of claims for out-of-state members directly to the local Blue Plan.

13  Through the Blue Card Program, members traveling or living outside their Plan's

14  service area receive PPO-level benefits when they need services.

15      21.    Under the Blue Card Program, Blue Cross Blue Shield entities

16  throughout the United States are supposed to act in concert with one another in the

17  business of processing, managing and paying medical provider claims.  The

18  enrollment card issued to each ERISA Plan member-patient by a Blue Cross Blue

19  Shield entity instructs the member-patient to submit his or her healthcare claim to the

20  local "Host"[1] Blue Cross Blue Shield named entity in the state where the medical

21  services were performed.

22      22.    Anthem Blue Cross did the verification and benefit eligibility analysis for

23  most of the claims at issue in this case, subject only to a few claim exceptions.  The

24  claims in this action were initially submitted by Plaintiff for claim processing through

25

26  _____

[1]    The Blue Card Host is the BCBS entity in the area where the healthcare services

27  are rendered.

28

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND
COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

Anthem Blue Cross, acting in its capacity as "Host" entity for the Plan underwritten by BCBS-AZ which acted on behalf of the "Home" entity that issued the Teamster Plan.   Plaintiff is informed and believes that all claims submitted through Anthem Blue Cross were forwarded to Blue Shield of California[2] for processing.

23.     For convenience and easy reference in this complaint Anthem Blue Cross, Blue Cross Blue Shield, Blue Cross Blue Shield of Arizona and Southwest Administrators will be collectively referred to as "Non-Party Administrators". Plaintiff does not bring this suit against the Non-Party Administrators of the Teamster Plan.  Plaintiff believes that the Teamster Plan is a self-funded Plan with full and exclusive authority to determine through its own Trustees all questions of coverage and eligibility, the methods of providing or arranging for benefits and any other related matters including payments of benefit claims submitted by Plaintiff.

## V.    PROCEDURAL HISTORY OF THE CLAIMS IN THIS CASE

24.     During the period May 6, 2020 through September 10, 2020, Noveon provided out-of-network[3] healthcare services at its surgery center in Tarzana, California on sixteen (16) occasions for patients who were members or beneficiaries under the Teamster Plan.  A total of fourteen (14) patients received services at the Noveon facility during this time period, with surgeons performing a variety of services.  A list of the patients who received services at the Noveon facility is attached

---

[2]     Plaintiff is informed and believes that in California Blue Cross Blue Shield is called Blue Shield of California. Blue Shield of California is a non-profit mutual benefit corporation based in Oakland, California.

[3]     Out-of-Network under the Teamster Plan refers to Providers who are not contracted with the PPO network to provide the discount other Network providers offer to the participants of the Plan.  Out-of-network Services are defined under the Teamster Plan as services provided by a Healthcare Provider that is not a member of the Plan's Preferred Provider Organization (PPO) as distinguished from In-Network services, that are provided by a Health Care Provider that is a member of the PPO.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

hereto as Exhibit A with the patient names and identifiers redacted for privacy.[4]

25.     As condition to provision of services by Noveon, each patient signed an agreement assigning his or her Teamster Plan rights and benefits to Noveon in their entirely.  Each such assignment of benefits would provide for Noveon to receive direct payment by the Plan insurer for the services provided to the patient.  Noveon has received a written assignment of benefits in connection with every outstanding benefits claim event at issue in this action.  An exemplar of the form of assignment document utilized by Noveon in connection with the claims at issue in this case is attached hereto as Exhibit B.

26.     When the Teamster Plan members came to Noveon for surgery center facility services they would present medical cards in the name of Blue Cross Blue Shield of Arizona.  The relevant insurance contract information on each medical card would direct Noveon to contact BCBS-AZ.  A true and correct copy of an exemplar of the Teamster Plan insurance card is attached hereto as Exhibit C. In most instances, upon calling the number identified on the medical card, Noveon representatives were advised to call the local Anthem Blue Cross entity at the Blue Card eligibility line for pricing and eligibility benefits.

27.     For every claim event at issue in this case, it was Noveon's custom and practice to contact either the Anthem Blue Cross at the Blue Card eligibility line or BCBS-AZ for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services.  The regular practice was that Noveon contacted either an Anthem Blue Cross and/or BCBS-AZ representative to discuss the

---

[4] The names and any identifying information about the insured patients are not set forth in this Complaint in order to preserve and protect the patient privacy.  Plaintiff will make the identifying information available to Defendant pursuant to an appropriate protective order, and will request that patient information also be subject to appropriate protection during the course of the litigation proceeding in this Court.

proposed surgery event by telephone in advance of the services being performed. In each such telephone communication the Anthem Blue Cross and/or BCBS-AZ representative would advise Noveon that coverage existed for the patient and that benefits were properly payable to Noveon for its facility services.

28. After the Noveon representative had verified that the specified treatment was covered and that Noveon was eligible for payment of Plan benefits, Noveon would then provide facility services for the surgery event for which verification was obtained.

29. In each telephone verification call Noveon inquired as to the percentage of coverage for an Out-of-Network provider, the deductible and the out-of-pocket maximum for the Plan and whether a pre-authorization was required. In most telephone verification calls, Noveon was advised that Noveon as an out-of-network provider would receive 80%; that there was no deductible, there was no out-of-pocket Maximum, and no pre-authorization was required. In some instances, the percentage identified was 80% of the Allowed Amount and in others it was 80% of the Usual and Customary charge. In none of the insurance verification calls was Noveon ever advised that Medicare rate applied and the insurance verifications prepared by Noveon show that no Medicare percentage allocation was to be utilized in pricing the claims. An exemplar of a verification document is attached hereto as Exhibit D.

30. In connection with each of the claims where services were provided, Noveon was advised to bill and submit claims to the Local Blue entity at P.O. Box 60007, Los Angeles, CA 90060, for the services provided. The Noveon billings were submitted on a standard UB04 form which identified the provider name, address, patient name, patient address, sex and ID number, the date of service and the nature of the services rendered. The claims submitted by Noveon for each patient were identified on the claim forms by Current Procedural Terminology (CPT) codes. The

CPT Code is a medical code maintained by the American Medical Association through the CPT Editorial Panel.  The CPT codes set describes medical, surgical, and diagnostic services and is designed to communicate uniform information about medical services and procedures among physicians, coders, patients accreditation organizations, and payors for administrative, financial, and analytical purposes.  An exemplar of the claim form submitted with the patient's name and identifier redacted for privacy is attached hereto as Exhibit E.

31.    In connection with every claim forms submitted, Noveon has received an Explanation of Benefits ("EOB") from Blue Shield of California and in each instance, Noveon has received partial payments from Blue Shield of California for the services rendered.  An exemplar of the EOB received by Noveon from Blue Shield of California is attached hereto as Exhibit F.

32.    With respect to the partial payments received for each claim, appeals were undertaken by Noveon. In majority of the appeals, Noveon received letters indicating that the appeals have been forwarded to the Home Plan for review.  To this date with the exception of two cases where the underpayment have been upheld, there has been no final determination on the appeals.  All appeals have been futile and have not resulted in any additional payments.

## VI.    WAIVER AND ESTOPPEL OF ANTI-ASSIGNMENT CLAUSE AND MEDICARE PRICING

### A. Defendant Has Waived any Anti-Assignment Provisions in the Teamster Plan and any Basis for Assertion of Medicare Pricing

33.    For every claim event at issue in this case, Noveon's custom and practice was to contact the Anthem Blue Cross by telephone for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services.  The regular practice was that Noveon and Anthem Blue Cross representative would

discuss the proposed surgery event by telephone in advance of the services being performed and in each such telephone communication the Anthem Blue Cross and/or BCBS-AZ representative would advise Noveon that coverage existed for the patient and that benefits were properly payable to Noveon for it's facility out-of-network services

34.    At no time during any of the pre-surgery telephone communications was Plaintiff ever advised that Anthem Blue Cross, Blue Shield of California, BCBS-AZ, and/or the Teamster Plan or any other entity was planning to assert or intended to assert an "anti-assignment clause" as a basis to bar payment to Plaintiff for the Exhibit A claims where Plaintiff was seeking payment pursuant to patient assignments of benefits.  Instead, the representative affirmed in each instance during the verification calls that Plaintiff was eligible to receive benefits as an out-of-network provider and in fact Plaintiff has received partial payment on all claims in this action.

35.    After the services were provided, Plaintiff timely submitted claim forms to Anthem Blue Cross.  Plaintiff's billing forms submitted to Anthem Blue Cross set forth the date of the service, the nature of the services rendered, the identity of the insured member and/or dependent, the patient date of birth, and the applicable Plan ID number.  Each of Plaintiff's claim billing forms set forth all requisite information in standard terminology with sufficient detail to enable Defendant and/or the Non-Party Administrators to consider and pay the claim in the ordinary course of business. On each billing form submitted by Plaintiff, Plaintiff also marked a "Y" in box 53, which affirmed that Plaintiff was asserting its claim for payment pursuant to a patient assignment of benefits.

36.    After the claim submittals by Noveon, for each claim event in this action, Blue Shield of California followed a practice of administrative review whereby it would provide an EOB document which was supposed to explain the underpayments

applied with respect to Plaintiff's billing submittals.  However, each of these written EOB documents was woefully deficient in its explanation of the purported grounding asserted by Blue Shield of California for the underpayments applied with respect to Plaintiff's bills.  The EOB forms gave no indication whatsoever as to reason for denial, the manner of computation of the Allowed Amount or any Plan language which was utilized to determine the amount.

37.    After receiving the EOB and the partial payments, Noveon appealed every single claim in this action.  In majority of the appeals, Noveon received letters indicating that the Appeals have been forwarded to the Home Plan for review.  At no time during the appeal process was Noveon ever advised by Defendant or the Non-Party Administrators that they intended to assert anti-assignment as a basis for the underpayment or defense or that Medicare pricing would form a basis for the amount paid by the Plan.

38.    At no time in the administrative review process did Anthem Blue Cross, BCBS-AZ or Blue Shield of California or Defendant ever assert an anti-assignment clause as a basis for underpayment of benefits with respect to Plaintiff's claims - - whether in the EOB documents, or in telephone and written communications with representatives of Plaintiff, or in response to appeals submitted by Plaintiff after its claims were underpaid. At no time prior to the filing of this litigation has Defendant or any of the Non-Party Administrator ever mentioned any anti-assignment clause in the Plan documents or asserted any anti-assignment clause as a grounding for underpayment of Plaintiff's claims.  In fact, Defendant and the Non-Party Administrators or during the course of the administrative review process, undertook to pay and actually did pay all of the claims submitted by Plaintiff (albeit in deficient and unsatisfactory amounts), without ever mentioning or claiming anti-assignment at all.

39.    Defendant has waived any anti-assignment clause contained in the Teamster Plan by failing to timely assert the anti-assignment clause defense both: (a) in the course of pre-surgery telephone communications with Plaintiff's representatives; and (b) in the course of the post-surgery administrative review process in which Defendant and the Non-Party Administrators, with knowledge of Plaintiff's status as an assignee, undertook to review, analyze and pay Plaintiff's claims.

40.    Similarly with respect to employing Medicare pricing as any basis for payment of Noveon's claims in whole or in part the Plan has waived all such grounding as Medicare pricing has never been asserted by the Plan as its methodology for computation of the Amount paid or Allowed Amount either in the course of pre-surgery telephone communications and/or in the course of post-surgery administrative review process.

41.    When making a claim determination under ERISA "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.,* 770 F.3d 1282, 1296 (9th Cir. 2014); *Harlick v. Blue Shield of Cal.,* 686 F.3d 699, 719 (9th Cir. 2012) "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]"; *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois,* 953 F.3d 435 (9th Cir. 2020).

**B. Defendant is Estopped from Asserting Any Anti-Assignment Provision Contained in the Teamster Plan or Any Basis to Assert Medicare Pricing**

42.    Plaintiff relied and reasonably relied on the telephonic representations: (a) by providing surgery center facility services to the individual patient(s) in response

– 14 –

to Defendant and/or the Non-Party Administrators' statements about its eligibility to receive benefits; and (b) by providing surgery center facility services to Teamster Plan insured members and their dependents on an ongoing basis in reliance upon the Defendant and/or the Non-Part Administrators repeated representations that the patients were covered and that Plaintiff was eligible to receive out-of-network benefits on the benefits payment formulations as stated for the Teamster Plan. But for the advance telephone representations of the Defendant and/or the Non-Party Administrators in affirming Plaintiff's right to receive payment, Plaintiff would not have provided, or continued to provide, surgery center facility services to Plan members and dependents for Teamster Plan.

43.    By representing to Plaintiff what the Plan benefits were, and further representing that Plaintiff was eligible to receive Plan benefits as an out-of-network provider, Defendant and its representatives and Non-Party Administrators clearly intended to cause Plaintiff to believe that patient assignments in favor of Plaintiff would be honored at such time as Plaintiff's claims were presented - - otherwise there would be no reason for Defendant, its administrators and its representatives to discuss and verify Plan benefits with Plaintiff at all. It would be false and misleading in the extreme for Defendant and the Non-Party Administrators to verify the existence and amount of patient coverage to Plaintiff and confirm that Plaintiff was eligible to receive benefits, while at the same time failing to disclose to Plaintiff that the Teamster Plan intended to assert an "anti-assignment" clause after services were performed as a basis to bar payment to Plaintiff after the fact. This sort of conduct constitutes deceit, and it is well settled under the law of misrepresentation, concealment, and estoppel that if a party undertakes to speak, either voluntarily or in response to inquiry, he is bound not only to state truly what he tells, but also to not suppress or conceal any facts within his knowledge which materially qualify the facts

– 15 –

stated.  Defendant through its representatives and administrators engaged in misrepresentation and concealment and are thereby estopped from asserting "anti-assignment" by failing to disclose true intent in the pre-services verification process. *See, Beverly Oaks, supra.*

44.     Similarly with respect to employing Medicare pricing as any basis for payment of Noveon's claims in whole or in part the Plan is estopped from asserting all such grounding as Medicare pricing has never been asserted by the Plan as its methodology for computation of the Amount paid or Allowed Amount either in the course of pre-surgery telephone communications and/or in the course of post-surgery administrative review process. It would be false and misleading in the extreme for Defendant and the Non-Party Administrators to verify coverage at 80% of Usual and Customary and/or Allowed Amount to Plaintiff, while at the same time failing to disclose to Plaintiff that the Teamster Plan intended to assert Medicare percentage for its calculation of the Allowed Amount.

## VII.   NOVEON IS ENTITTLED TO ITS ACTUAL BILLED CHARGES AS PAYMENT FOR THE SERVICES RENDERED UNDER THE PLAN

45.     Plaintiff is informed and believes that out-of-network providers are paid according to the "Allowed Charges" under the Teamster Plan.  "Allowed Charges" is a defined term under the Teamster Plan. Allowed Charge means the amount the Plan allows as a payment for eligible medically necessary services or supplies.  The Allowed Charge Amount under the Teamster Plan is determined by the Plan Administrator or its designee to be **the lowest of:**

1.     **With respect to a network provider** (PPO network Healthcare or Dental Care provider/facility), the fee set forth in the agreement between the PPO network Health Care or Dental Care Provider/facility and the PPO network or the Plan; or

– 16 –

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

2.    **With respect to a non-network provider for dates of service starting 1-1-16**, allowed charge amount means 150% of the Medicare Allowable Rate for the geographic area where the service is furnished. This is the dollar amount the Plan has determined it will allow for eligible medically necessary services or supplies performed by non-network providers. Medicare Allowable Rates are the rates established and periodically updated by the Center for Medicare and Medicaid Services (CMS) for payment for services and supplies provided to Medicare enrollees. The claim administrator updates its systems with these revised rates within 180 days of receiving them from CMS. If Medicare does not have a rate for a particular service, the rate will be based on the same method that CMS uses to set Medicare rates. Geographic area is generally defined by the first three digits of the U.S. Postal Service zip codes.

The Plan's allowed charge amount list is not based on or intended to be reflective of fees that are or may be described as usual and customary (U&C), reasonable and customary (R&C), usual, customary and reasonable Charge (UCR) or any similar term. The Plan reserves the right to have the billed amount of a claim reviewed by an independent medical review firm/providers to assist in determining the amount the Plan will allow for the submitted claim; or

3.    The Healthcare or Dental Care Provider/facility's actual billed charges.

46.    The Teamster Plan has failed to process Plaintiff's claims in accordance with the Plan terms. In every instance where services were provided an EOB was transmitted to Plaintiff indicating the Allowed Amount payable to Plaintiff for the services rendered. In every claim instance Plaintiff has received an amount that bears no relation to "150% of Medicare" or any other recognizable method for computing

– 17 –

Allowed Amount under the Plan.  With Defendant's absence of any proper calculation of Allowed Amount, Defendant is now estopped from asserting Medicare Rates for the calculation of its Allowed Amount as it applies to Plaintiff's Claims. *Beverly Oaks, supra.*

47.    Plaintiff is entitled to have its claims paid based on its actual facility billed charges as it is defined under the Allowed Charges under the Plan. The Plan specifically states that Plaintiff is entitled to is actual billed charges.  This is the Plan formulation which should have been and should be utilized with respect to each of Plaintiff's claims in this action.

## VIII. <u>PLAINTIFF IS DEEMED TO HAVE EXHAUSTED ITS ADMINISTRATIVE REMEDIES</u>

48.    Plaintiff is informed and believes that the law permits Plaintiff to pursue remedies under Section 502 (a) of ERISA without exhausting any appeal procedure of the Plan since the Plan has failed to follow the Plan properly.  Plaintiff has appealed all of the claims in this action.  In response to the appeal undertaken, in some instances Noveon was informed that appeals were forwarded to the Home Plan.  In other instances, signatures from patients authorizing the appeal were requested.  In all of the appeals except two where the appeals have been upheld there has been no final determination and no responses provided by Defendant and/or the Non-Party Administrators.  To this date the appeals have been futile and have not resulted in any final determination.

49.    Defendant and the Non-Party Administrators have systematically violated the applicable claims procedure regulations governing ERISA Plans as are set forth in 29 C.F.R. §2560.503-1, and Plaintiff is thereby deemed to have exhausted its administrative remedies.  Defendant and the Non-Party Administrators have routinely failed to meet the minimum requirements for fulfillment of employee

benefit plan procedures pertaining to claims.  See 29 C.F.R. §2560.503-1 (a).

50.     The central obligation set forth in the regulations is that: "Every employee benefit plan shall establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determination, and appeal of adverse benefit determination." 29 C.F.R. §2560.503-1 (b).  Of particular significance in this case are the regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. §2560.503-1 (g) (1).  This regulatory provision requires that the claim administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination.  The regulations require the following:

"The notification shall set forth, in a manner calculated to be understood by the claimant –

1)  The specific reason or reasons for the adverse determination;

2)  reference to the specific plan provisions on which the determination is based;

3)  a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

4)  a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502 (a) of the Act following an adverse benefit determination on review."

51.     These notification requirements were not met in the present action, and the regulations are specific about the consequence of this failure by Defendant to comply with notification requirements.  29 C.F.R. § 2560.503-1 (1) provides:

"1.     <u>Failure to Establish and Follow Reasonable Claims Procedure:</u>
In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to

– 19 –

have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502 (a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

52.    Plaintiff is deemed by law to have exhausted administrative remedies because Defendant failed to establish and follow reasonable claims procedures as required by ERISA.  Defendant has routinely failed to process claims submitted by the Plaintiff in a manner consistent or substantially in compliance with ERISA regulation 29 C.F.R. §2560.503-1.  Among other things, Defendant has:

- failed to set out the specific reason for underpayment of Plaintiff's claims in the responses transmitted to Plaintiff during the administrative review process;

- failed to reference the specific Plan provisions upon which its underpayment determinations were based;

- failed to give a description of additional material or information which was needed to pursue and perfect the claims, and an explanation of why such information was necessary;

- failed to provide Plan documents, or internal rules, guidance, protocols or other criteria upon which the underpayment determinations were based;

- failed to state the underpayment determinations in a manner calculated to be understood by Plaintiff;

- failed to provide a reasonable opportunity for full and fair review of the underpayment determinations;

acted systematically in a manner which rendered the administrative appeal process a futile and meaningless endeavor, including specifically by failing to provide a final determination of the appeal undertaken by Noveon.

///

///

– 20 –

**FIRST CAUSE OF ACTION**

**(Teamster Plan and DOES 1-100)**

**Enforcement Under 29 U.S.C. §1132 (a)(1)(B) For Failure to Pay ERISA Plan Benefits and For Recovery of Reasonable Attorney's Fees and Costs Under 29 U.S.C. § 1132 (g)(1)**

53.    The allegations of the prior paragraphs (paragraphs 1 - 52) of this Complaint are hereby incorporated by reference in this First Cause of Action as if fully set forth at length.

54.    This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with the Teamster Plan.

55.    Plaintiff seeks to recover benefits and enforce rights to benefits under 29 U.S.C. §1132 (a)(1)(B); and under 29 U.S.C. §1132 (g)(1) for recovery of reasonable attorney's fees and costs. Plaintiff has standing to pursue these claims as the assignee of member benefits.  As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for purposes of the ERISA statute and regulations.  ERISA authorizes actions under 29 U.S.C. § 1132 (a)(1)(B) to be brought directly against the Teamster Plan who had actual control over the benefit and payment determinations with respect to Plaintiff's claims.

56.    By reason of the foregoing, Plaintiff is entitled to recover ERISA benefits due and owing in an amount to be proven at trial, and Plaintiff seeks recovery of such benefits by way of the present action on the basis of recovery of Plaintiff's actual charges as called for in the Plan.  The Teamster Plan has full and exclusive authority to determine all questions of coverage and eligibility, the methods of providing or arranging for benefits and any other related matters.

57.    29 U.S.C. § 1132 (g)(1) authorizes the Court to allow recovery of reasonable attorney's fees and costs incurred in this action.  Plaintiff has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to

– 21 –

recover its reasonable attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Teamster Plan as follows:

1. For damages against Teamster Plan in an amount to be proven at trial for underpayment of benefits in connection with the healthcare benefits claims at issue in this case on the basis of recovery of Plaintiff's actual charges as called for in the Plan.

2. For interest at the applicable legal rate.

3. For reasonable attorney's fees and costs in an amount to be proven at trial.

4. For such other relief as the Court may deem just and proper.


**Dated:** February 24, 2022                    Respectfully submitted,

                                        **WILLIAMS LAW FIRM PC**



                                        By:   /s/ Richard D. Williams
                                              Richard D. Williams,
                                              Attorneys for Plaintiff Noveon Surgery
                                              Center, Inc.